Charles N. **LANDRETH** et al., Plaintiffs,

v.

William D. **HOPKINS**, etc., Defendant.

Civ. A. No. 1729.

United States District Court,
N. D. Florida.

Sept. 22, 1971.

Thomas A. Edmonds, Tallahassee, Fla., for plaintiffs.

Howell L. Ferguson, Asst. Atty. Gen., Tallahassee, Fla., for defendant.

## OPINION-ORDER

Before RONEY, Circuit Judge, and ARNOW and MIDDLEBROOKS, District Judges.

MIDDLEBROOKS, District Judge:

This cause is before this duly constituted Three-Judge Court in which plaintiffs seek declaratory and injunctive relief pursuant to Title 28, United States Code, Sections 2201 and 2281, to have § 797.01 and § 797.02, Florida Statutes, F.S.A. declared unconstitutional as applied to plaintiffs as being violative of their federally protected constitutional rights under the First and Sixth Amendments of the Constitution of the United States. It is also alleged that prosecution under the above described statutes would be a further abridgement of constitutional rights guaranteed by the Due Process and Equal Protection clauses of the Fourteenth Amendment.

Generally the threshold issue before a statutory Three-Judge Court is whether there is in fact and in law a substantial constitutional question presented in the complaint. See Jackson v. Choate, 404 F.2d 910 (5th Cir. 1968). See also Mayhue's Super Liquor Store, Inc. v. Meiklejohn, 426 F.2d 142 (5th Cir. 1970). Guided by the rule of *Jackson,* supra, this Court, sitting as a single Judge, made application for the convening of a Three-Judge Court. That application having been granted, this cause came on to be heard upon pending motion of defendant to dismiss the complaint. Prior to hearing before this Court the parties on August 25, 1971, entered into a stipulated statement of facts which document has been filed and made a part of this Court's records. Testimony has also been taken and transcribed and made a part of this record.

The facts pertinent to this action may be chronicled as follows:

Plaintiffs Landreth and Sandon are active participants in abortion counseling in the Tallahassee, Florida, area.

These counseling services are rendered free of charge to prospective counselees. If after receiving counseling advice and other appropriate information and instruction the counselee wishes to obtain an abortion she is referred to an abortion clinic in the State of New York. Because of these activities, plaintiffs believe they will be arrested and prosecuted and for this reason this suit was brought.

The laws of Florida under which the alleged prosecution is threatened provide in part:

> "Whoever with intent to procure miscarriage of any woman * * * advises * * * or with like intent aids or assists therein, shall * * * be punished by imprisonment * * * or fine * * *." Chapter 797, § 797.01, Florida Statutes.

> "Whoever knowingly advertises, * * * distributes or circulates * * * any pamphlet, printed paper, book, newspaper notice, advertisement or reference containing words or language giving or conveying any notice * * * to any person * * * from whom, or to any place * * * where * * * any advice, direction, information or knowledge may be obtained for the purpose of causing or procuring the miscarriage of any woman pregnant with child, shall be punished by imprisonment * * * or by fine * * *." Chapter 797, § 797.02, Florida Statutes.

The defendant Hopkins has conducted investigations into the activities of the plaintiffs Landreth and Sandon to determine if violations of Florida law may have occurred and has submitted the fruits of his investigation to the Leon County Grand Jury for their consideration to determine if plaintiffs' practices are in violation of Florida law. As of this date there have been no grand jury indictments returned against these plaintiffs and no plaintiff has been arrested or prosecuted. Because of the alleged imminency of prosecution plaintiffs Sandon and Landreth abandoned their counseling service on or about July 9, 1971, and have not resumed same as of this date.

Plaintiffs Bell, Jones and Wailes are counselees of plaintiffs Landreth and Sandon and as such have received advice relative to problem pregnancies. Each of these female plaintiffs has received an abortion in the State of New York either as a direct or indirect consequence of the counseling efforts of Landreth and Sandon; however, it appears without dispute that the plaintiffs Bell, Jones and Wailes have not been the focus of any investigation nor have they been or now are they threatened with prosecution by the defendants. Additionally it appears at present that these plaintiffs have no need for counseling services.

It is in this legal setting that defendant has as the fountainhead of his argument that sextet of cases[1] of which Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is in the forefront.

Focusing attention to the alleged threatened conduct of the defendant Hopkins the strongest intimation of immediate and irreparable injury which might befall plaintiffs is from that statement contained in paragraph 6 of the complaint:

> "As a direct and proximate result of said conduct by defendant, plaintiffs Landreth and Sandon have been intimidated in the free exercise of their first amendment freedoms of speech and religion, and have felt compelled to terminate their counsel-

---

1. Younger, supra; Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).

ing activities as delineated in paragraph 3 above."[2]

Further examination of the record discloses that defendant intends to prosecute any violations of Section 797.02, Florida Statutes, F.S.A., in the event indictments are returned against plaintiffs, but he has never publicly or privately threatened any of the plaintiffs with arrest or prosecution. It is also worthy of note that under Florida Law, as conceded by the parties, the defendant State Attorney may file direct informations for violations of the statutes attacked if he wishes to do so. This he has not done.

If the recent pronouncements in the *Younger* series are not sufficient, formidable impediments to plaintiffs' entry into the domain of federal jurisdiction, then attention is called to Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L. Ed. 1416 (1941), wherein additional prohibitory language will be found.

In *Buck*, supra, a Florida statute forbidding unlawful combinations of musical authors and composers was subjected to constitutional attack when members of the American Society of Composers, Authors and Publishers (ASCAP) became fearful of prosecution by the Attorney General of Florida and the state's prosecuting attorneys for possible violation of the statutory plan in question. "The original bill alleged that the defendants had threatened to—and would unless restrained—enforce the 1937 statute 'in each and all of its terms and the whole thereof, and particularly against these complainants and others similarly situated * * *' and that as a consequence complainants would suffer irreparable injury and damages." *Ibid.* at 398, 61 S.Ct. at 965. The Three-Judge District Court, finding that " 'Defendants have threatened to and will enforce such State Statutes against these Complainants and others similarly situated in the event that such Complainants and

others similarly situated refuse to comply with said State Statutes or do any of the acts made unlawful by said State Statutes.' " *Ibid.* at 399, 61 S.Ct. at 966, granted relief. Upon review the United States Supreme Court reversed.

As in *Younger,* supra, there was an absence of any equitable basis for invoking the federal authority to suspend the operation of a viable state statute. Aware that this remedy should have only infrequent application in those instances where it was clearly manifest that constitutional rights would be impinged, the Court delivered this teaching:

"Federal injunctions against state criminal statutes, either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, even if such statutes are unconstitutional. 'No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid.' Beal v. Missouri Pacific Railroad Corp., 312 U.S. 45, 49 [61 S.Ct. 418, 420, 85 L.Ed. 577]. A general statement that an officer stands ready to perform his duty falls far short of such a threat as would warrant the intervention of equity. And this is especially true where there is a complete absence of any showing of a definite and expressed intent to enforce particular clauses of a broad, comprehensive and multi-provisioned statute. For such a general statement is not the equivalent of a threat that prosecutions are to be begun so immediately, in such numbers, and in such manner as to indicate that virtual certainty of that

---

**2.** Parenthetically it is noted that the complaint contains no averment of bad faith or harassment on part of defendant in his course of conduct and it is apparently conceded by plaintiff that such is not the case.

extraordinary injury which alone justifies equitable suspension of proceedings in criminal courts. *The imminence and immediacy of proposed enforcement, the nature of the threats actually made, and the exceptional and irreparable injury which complainants would sustain if those threats were carried out* are among the vital allegations which must be shown to exist before restraint of criminal proceedings is justified. Yet from the lack of consideration accorded to this aspect of the complaint, both by complainants in presenting their case and by the court below in reaching a decision, it is clearly apparent that there was a failure to give proper weight to what is in our eyes an essential prerequisite to the exercise of this equitable power. The clear import of this record is that the court below thought that if a federal court finds a many-sided state criminal statute unconstitutional, a mere statement by a prosecuting officer that he intends to perform his duty is sufficient justification to warrant the federal court in enjoining all state prosecuting officers from in any way enforcing the statute in question. Such, however, is not the rule. 'The general rule is that equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional * * * To justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights * * * ' * * * *." *Ibid.* at 400–401, 61 S.Ct. at 966–967.[3] (Emphasis supplied)

■ Returning to examination of the complaint in the suit at bar and in light of the record as presently constituted, it is clear that plaintiffs Bell, Jones and Wailes cannot show the immediacy and

degree of irreparable harm to entitle them to maintain this action, or that a "controversy" exists between these plaintiffs and the defendant. *Buck,* supra. Although they are past counselees of the plaintiffs Landreth and Sandon, plaintiffs Bell, Jones and Wailes have no pregnancies for which they wish immediate counseling. Moreover, none of these three named plaintiffs has been the focus of any investigation or threatened with prosecutorial action by defendant. See paragraph 4, Stipulation.

■ Insofar as plaintiffs Landreth and Sandon are concerned, the complaint alleges, and evidence indicates, that these plaintiffs, having been subjected to investigation and threat of prosecution, have felt compelled to abandon their counseling activities. They assert the conduct of defendant constitutes intimidation and a violation of their First Amendment freedoms of speech and religion. Recalling what *Younger, Buck* and related cases have taught us, this Court finds no equitable basis for the relief requested. Many facts in this action parallel those of *Younger* and *Buck,* supra. In *Younger,* certain of the plaintiffs, because of the existence of the California syndicalism statute, felt "inhibited" in the exercise of their First Amendment freedoms and were reluctant to pursue a certain course of conduct. No threats of prosecution had been made against them nor was it shown that prosecution against them was likely. The Court found their fears to be too speculative for the exercise of the extraordinary federal equitable relief which they sought.

Even closer in facts, *Buck,* supra, held that even though it was found that a state officer stood ready to prosecute those in violation of a particular state statute, that statement alone would not constitute the necessary element of immediate and irreparable injury to war-

3. Following this statement, the Court then alluded to the preferred procedure of abstention as recently revived and more fully developed in Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) and Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). See also Hill v. City of El Paso, 437 F.2d 352 (5th Cir. 1971). However, since our decision today rests on other grounds, we pretermit discussion of the applicability of this doctrine to the instant action.

rant the exercise of federal equitable relief. The complaint before us is totally devoid of those essential allegations which can be proved to justify invocation of the extraordinary remedies possessed by this Court. *Buck,* supra. See also *Hill,* supra; Hughes v. District Attorney for Atlanta, Georgia, 436 F.2d 568 (5th Cir. 1970). Thus, in its present posture, the case at bar affords no opportunity for this Court to consider this suit as one of the "other unusual situations calling for federal intervention * * *." *Younger,* supra, 401 U.S. at 54, 91 S.Ct. at 755.

Having determined existence for equitable relief has not been established, the request for declaratory relief founders as well. *Samuels,* supra; *Boyle,* supra; LeFlore et al. v. Robinson et al., 446 F.2d 715 (5th Cir. 1971). Cf. Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

This Court therefore concludes this cause should be dismissed, without consideration of the merits.

Accordingly, it is ordered and adjudged that this suit should be and it is hereby dismissed without consideration on the merits and at Plaintiffs' cost.