**Reuben ABEYTA et al., Plaintiffs-Appellants,**

v.

**The TOWN OF TAOS, a municipal corporation, et al., Defendants-Appellees.**

No. 73–1828.

United States Court of Appeals,
Tenth Circuit.

Argued May 16, 1974.

Decided July 2, 1974.

---

mediately began implementing new policies and restructuring the department.

One of Rivera's first changes was made on May 26, 1972, when he discharged Mabel Valdez, a clerical employee. Her termination letter stated "the office feels that a woman would be out of place with the tedious work we anticipate in order to update and modernize the department." In a subsequent letter to the Taos Police Commission, however, Rivera said he terminated Valdez because (1) she could not keep an adequate filing system, (2) she accepted money for traffic fines but failed to give it to the police magistrate, and (3) she had become involved with one of the police officers. The record does not disclose that the town council acted on Valdez' termination.

Thereafter, on August 7, 1972, Rivera discharged appellant Jose Montoya for bypassing the chain of command and for dereliction of duty. The termination letter informed Montoya he had ten days to appeal the decision. The police commission subsequently recommended approval of Montoya's dismissal and he was officially terminated by the town council.

On August 30, 1972, Rivera discharged appellant DeBaca. The termination letter made specific reference to violations of police department rules and informed DeBaca he had ten days to appeal the decision. DeBaca did appeal and on September 27, 1972, a special town council meeting was held to afford him a hearing. He was officially terminated at the next regular town council meeting.

The remaining police officers became increasingly dissatisfied with Rivera's actions and policies. On December 8, 1972, they sent a letter to Rivera complaining of employee harassment, requesting better working conditions, and demanding a meeting with the police commission. On December 18, 1972, the officers, Rivera, the police commission, and the town council met as a group to discuss the grievances. At that time ac-

Peter B. Shoenfeld, Santa Fe, N. M. (Neil C. Stillinger, Santa Fe, N. M., on the brief), N. M. Civil Liberties Union, for plaintiffs-appellants.

Eliu E. Romero, Taos, N. M., for defendants-appellees.

Before HILL, SETH and HOLLOWAY, Circuit Judges.

HILL, Circuit Judge.

This is a civil rights action brought by former municipal employees who claim they were unlawfully discharged from their employment. Appellants are former police officers of Taos, New Mexico, a municipal corporation. Appellees are the mayor and city council of Taos, New Mexico. Jurisdiction is founded on 42 U.S.C. §§ 1983, 1985 and 1988.

The relevant facts may be summarized as follows. In March, 1972, the appellees, newly-elected town officials, decided that the Taos Police Department needed to be revamped. Accordingly, they gave the police chief thirty days to accomplish the task. Believing this was an inadequate amount of time to achieve the desired results, the police chief resigned. Thereafter, Fernando Rivera was appointed as police chief and he im-

cusations were heard by the officers against Rivera, and vice versa.

On December 20, 1972, and apparently as a result of the December 18 meeting, appellants Montano, Cordova and Robert Montoya were suspended from duty.[1] Other police officers were placed on probation. An attorney representing these men requested a hearing on the matter. His letter to the mayor stated, *inter alia:*

> The hearing may be before the Town Council, the Police Commission, or an impartial panel appointed by the Town Council.

Although not required by state statute, an impartial panel was constituted to hear all charges previously made. It requested the police officers to attend its meetings, which lasted over a two week period. Appellants Montano and Cordova refused to attend although most of the officers, if not all, did participate.

On February 15, 1972, at the recommendation of the panel, officers Abeyta and Suazo and appellants Gallegos, Emsweller, Lucero and Martinez were discharged.[2] Appellants' counsel sent a letter to the mayor on February 28, 1973, demanding reinstatement and a hearing. The demands were ignored.

The police officers then instituted this action against appellees and the Town of Taos, in the United States District Court for the District of New Mexico. The complaint alleged, inter alia, (1) their terminations were not approved by the town council in the manner required by state statute, and thus were of no effect; (2) termination of their employment, a property right safeguarded by

the Fourteenth Amendment's equal protection and due process clause, required a hearing; (3) appellees' unlawful action damaged appellants' reputations and chances of finding other employment; and (4) a partial reason for appellants' termination was the letter they sent to Rivera on December 8, 1972, which was a constitutionally protected exercise of free speech. Appellants requested reinstatement and back wages, or in the alternative, reinstatement and back wages pending final outcome of a hearing.

An evidentiary hearing was held on May 18, 1973. At that time the town of Taos was dismissed as a party, and Abeyta's cause of action was dismissed for failure to prosecute. Based on the evidence presented, the trial court made the following findings: (1) appellants were not entitled to a termination hearing because their employment was not a property interest protected by due process; (2) their letter to Rivera revealed problems the town of Taos could legitimately correct by appropriate action; (3) DeBaca's termination did not conform to state law because not enough votes were cast in favor of termination, but did not merit relief; and (4) Valdez' termination, without a hearing, deprived her of due process and infringed upon her liberty because the charges against her could injure her reputation. Accordingly, the trial court ordered Valdez reinstated with back wages, but dismissed the action as to the remaining plaintiffs. Valdez has not appealed.

Appellants contend procedural due process demands that they be given a hearing on the reasons for their termination.

---

1. The suspended officers requested reasons for their suspensions. On January 10, 1973, the mayor sent each man a letter stating the reasons. Montano and Cordova were suspended for shooting a police car. Montoya was suspended because of complaints received about his treatment of persons he stopped for traffic violations and because it was believed he had been shooting out windows in town.

2. Emsweller sent a letter to the mayor, on behalf of himself and the other appellants,

requesting reasons for this action. The following reasons were given. Emsweller—disrespect to superior officers, taking time off work without prior notice or permission, lack of judgment in dealing with confidential matters; Gallegos—abusing sick leave, acting in a manner unbecoming a police officer, disobeying orders; Lucero—disobeying orders, lack of attendance to duties, lack of judgment in performing duties; Martinez—failure to observe and give effect to department policies, disrespect to superiors, lack of judgment in performing duties.

■■ The requirements of due process apply only to deprivation of interests encompassed within the Fourteenth Amendment's protection of "property" and "liberty". Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Appellants claim retention of their employment is a protected property right and rely on such cases as Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), where it was held that due process entitles welfare recipients to an adversary hearing before termination of benefits. However, these cases are dissimilar to the area of law now before us and are not persuasive. The types of property protected by the due process clause vary widely and what may be required by that clause in dealing with one set of interests may not be required in dealing with another set of interests. Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

■ In this regard, public office or employment generally is held not to be a property interest within the meaning of the Fourteenth Amendment. *See, e. g.,* Board of Regents v. Roth, *supra*; Lontine v. VanCleave, 483 F.2d 966 (10th Cir. 1973); Burks v. Perk, 470 F.2d 163 (6th Cir. 1972), cert. den'd, 412 U.S. 905, 93 S.Ct. 2288, 36 L.Ed.2d 970. This rule is not applicable in all situations, as where public employees hold contractual rights to continuing employment under formal tenure grounds. Summary termination of employment, under such circumstances, may well be actionable. Wilderman v. Nelson, 467 F.2d 1173 (8th Cir. 1973).

■■ However, the record does not disclose that appellants have any rights to continued employment which could constitute a property interest. They operate under no contract or commission and have no fixed term of employment,

and their employment must be considered terminable at will.[3] At best, appellants have a mere unilateral expectation of continued employment. This is not a property right encompassing due process guarantees. Perry v. Sindermann, *supra*; Board of Regents v. Roth, *supra*.

Appellants also contend that, because of the nature of the charges upon which their dismissals were based, a hearing was required before they could be deprived of their "liberty" protected by the Fourteenth Amendment against deprivation of due process. In Arnett v. Kennedy, *supra*, the Supreme Court said:

The liberty here implicated . . . is not the elemental freedom from external restraint . . . but is instead a subspecies of the right of the individual "to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." But that liberty is not offended by dismissal from employment itself, but instead by dismissal based upon an unsupported charge which could wrongfully injure the reputation of an employee. [Citations omitted].

In this respect, appellants' complaint alleged that their reputations were injured and that they were consequently placed at a disadvantage in obtaining other employment.

■ The charges against appellants, which can be characterized as allegations of improper job performance, are not of a nature that would stigmatize or injure their reputations, as would charges of dishonesty or immorality. Moreover, appellants have presented no evidence whatsoever to support this argument.

Nor can we conclude that their terminations have placed appellants at a disadvantage in obtaining other employment. Several appellants have found other jobs. Those who have not have sought employment only in Taos. In

---

3. Where a police officer's employment is not fixed he holds his office at the pleasure of the appointing authority. *See, e. g.,* 56 Am.

Jur.2d Municipal Corporations § 333 (1971); 62 C.J.S. Municipal Corporations § 577 (1949).

fact, one unemployed appellant testified that he was offered a job in another city as a deputy sheriff, but that he declined the offer.

Appellants have not established a deprivation of protected property or liberty interests, and therefore have no rights to a termination hearing.

The next issue concerns the letter appellants sent Rivera on December 8, 1972. They assert that it was a reason for their dismissal and contend the trial court erred in failing to find it was a constitutionally protected exercise of free speech.

■ The trial court did not hold that the letter was not an exercise of free speech, but only that it revealed existing problems which the town of Taos had a legitimate concern in correcting. This was not error. We recognize, as did the trial court, that a governmental employee cannot be dismissed solely because he makes statements critical of his superiors. *See, e. g.,* Pickering v. Board of Educ., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). But appellants were not dismissed because they wrote the letter. Instead, their dismissals resulted from findings of misfeasance made by a subsequently constituted investigatory panel. This was not an infringement upon their rights of free speech. The letter revealed substantive problems which were matters of public concern, and town officials would have been remiss in their duties had they not taken corrective action. Appellants' contention is without merit.

The final argument is that the trial court erred in refusing to grant relief to appellant DeBaca for his admittedly improper discharge. N.M.S.A. § 14–10–6 provides, *inter alia,* that an employee may be suspended or discharged by a majority vote of all the members of the

governing body.[4] Taos, a mayor-council form of municipal government, has four councilmen and a mayor, who votes only to break a tie vote.[5]

■ DeBaca was terminated by the town council on October 11, 1972. One councilman voted against his termination while two councilmen and the mayor voted in favor of his termination. One councilman was absent. This vote did not result in a valid discharge, which could only result from (1) three councilmen voting in favor thereof, or (2) a tie vote, broken by the mayor in favor of termination.

■ The trial court conceded that the vote was improper but nonetheless refused to grant DeBaca the equitable relief requested. This decision was a matter within its discretion and will not be reversed absent an abuse of that discretion.

Under the circumstances, we cannot conclude that the trial court abused its discretion. Even if the absent councilman had voted against termination there would have been a tie, which the mayor's vote would have broken. And even if DeBaca were reinstated, nothing could prevent his subsequent discharge at the next town council meeting. The relief granted would be ephemeral at best. Moreover, at the hearing on his discharge DeBaca stated that even if rehired, he would not return to work under existing conditions in the police department.

■ Finally we believe reinstatement with back wages would impose a considerable burden on the town of Taos, whose actions were in good faith. Equitable relief should not be granted where the hardship to the defendant substantially outweighs the benefit to the plaintiff.[6]

Affirmed.

4. N.M.S.A. § 14–10–6(D)(1) provides: the governing body may discharge an appointed official or employee by a majority of all the members of the governing body;

5. N.M.S.A. § 14–10–3 provides: The mayor of a municipality is the presiding officer of the governing body. In all municipalities the mayor shall vote only when there is a tie vote.

6. Our refusal to reinstate these Taos employees does not apply to Valdez. The trial court properly found that her liberty had been infringed upon and she has not appealed from that decision.